## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| DANIEL RADINSKI and VICTOR NERY, individually, and on behalf of a class of employees similarly situated, | ) ) ) ) ) | **JURY DEMANDED** |
|  | ) | **Case No. 07 C 0571** |
| Plaintiffs, | ) ) |  |
| v. | ) ) | **Judge David H. Coar** |
| APEX DIGITAL, LLC, a corporation, DYCOM INVESTMENTS, INC., a corporation, DYCOM INDUSTRIES, INC., a corporation, ROBERT J. CHASTAIN, in his individual capacity, and CAMERON WEST, in his individual capacity, | ) ) ) ) ) ) ) ) ) | **Magistrate Judge Susan E. Cox** |
| Defendants. | ) ) ) |  |

### THIRD AMENDED COMPLAINT

NOW COME Plaintiffs, Daniel Radinski and Victor Nery, pursuant to 735 Ill. Comp. Stat. 5/2-801 et seq. class actions; 820 Ill. Comp. Stat. 105/1 et seq., commonly known as the Illinois Minimum Wage Law ("IMWL"); 820 Ill. Comp. Stat. 115/1 et seq., commonly known as the Illinois Wage Payment and Collection Act ("IWPCA"); and 29 U.S.C.§ 200 et seq., commonly known as the Fair Labor Standards Act ("FLSA"), by and through their attorneys, Penny Nathan Kahan & Associates, Ltd. , Jac A. Cotiguala & Associates, and the Werman Law Office and in support of their complaint, state as follows:

## PRELIMINARY STATEMENT

1.     This is an action by current and former Field Technicians of Apex Digital, LLC ("Apex") to hold Defendants accountable for numerous violations of the IMWL, the IWPCA, and the FLSA.

2.     Defendants maintained policies whereby Field Technicians were required to perform work on a regular basis for which they received no compensation.

3.     Defendants consistently failed to adequately compensate Field Technicians for overtime hours worked.

4.     Defendants have not kept accurate records of the hours Field Technicians work and Plaintiffs and putative class members did not record all working time.

## THE PARTIES

5.     Plaintiff Daniel Radinski is a resident of the State of Illinois. He resides in Cook County.  He was a Field Technician for Apex from September 20, 2004 through June 28, 2006.

6.     Plaintiff Victor Nery is a resident of the State of Illinois.  He resides in Cook County. He was a Field Technician for Apex from approximately September 2005 through April 2006.

7.     Defendant Apex is a business/corporation doing business in the State of Illinois.  It has business operations in Cook County.  Apex is incorporated in Delaware and its principal executive office is located at 450 Pryor Boulevard, Sturgis, KY.

2

8.     Apex was an employer of Plaintiffs within the meaning of the IMWL, the IWPCA, and the FLSA in that, among many other things, it had the power to control how many hours Plaintiffs and the class they represent worked, whether they were paid for all hours worked, and whether they were paid one and one-half times their regular rate of pay for hours worked in excess of forty (40) in a week.

9.     Defendant Dycom Industries, Inc. ("Dycom") was an employer of Plaintiffs within the meaning of the IMWL, the IWPCA, and the FLSA in that, among many other things, it acted directly or indirectly in the interest of Apex in relation to Plaintiffs. Dycom, among other things, wholly owns Dycom Investments, Inc. which owns Apex, shares significant members in common with Apex as Officers on their Boards of Directors, provides Apex with legal and financial support, and owns all of Apex's common stock. Dycom is a business/corporation doing business in the State of Illinois. It has business operations in Cook County. Dycom is incorporated in Florida and its principal executive office is located at 11770 U.S. Highway 1, Suite 101, Palm Beach Gardens, FL.

10.     Defendant Dycom Investments, Inc. ("Dycom Investments") was an employer of Plaintiffs within the meaning of the IMWL, the IWPCA, and the FLSA in that, among many other things, it acted directly or indirectly in the interest of Apex in relation to Plaintiffs. Dycom Investments, which is owned by Dycom and wholly owns Apex, shares significant members in common with Apex and Dycom as Officers on their Boards of Directors. Dycom Investments is a business/corporation doing business in the State of Illinois. Dycom Investments is incorporated in Delaware and

its principal executive office is located at 11770 U.S. Highway 1, Suite 101, Palm Beach Gardens, FL,

11.     Defendant Robert Chastain, III, ("Chastain") was President of Apex from at least December 28, 2003 through December 2005 and was listed as such in the Illinois Secretary of State's records. Chastain was an employer of Plaintiffs within the meaning of the IMWL, the IWPCA, and the FLSA in that, among many other things, he had the power to control how many hours Plaintiffs and the class they represent worked, whether they were paid for all hours worked, and whether they were paid one and one-half times their regular rate of pay for hours worked in excess of forty (40) in a week.

12.     Defendant Cameron West ("West") was the President of Apex from approximately January 2006 through December 2006. West is an employer of Plaintiffs within the meaning of the IMWL, the IWPCA, and the FLSA in that, among many other things, he had the power to control how many hours Plaintiffs and the class they represent worked, whether they were paid for all hours worked, and whether they were paid one and one-half times their regular rate of pay for hours worked in excess of forty (40) in a week.

## ALLEGATIONS COMMON TO ALL COUNTS

13.     Apex employed in excess of 300 Field Technicians in Illinois whose primary job was to go to customers' homes to install, service, and upgrade all components of DirecTV satellite systems.

4

14.     Field Technicians were required to drive to and from customer homes to install and repair DirecTV satellite systems.

15.     Apex instructed employees to fill out time sheets listing their starting time as when they arrived at the first home they visited in a given day and their ending time as when they left the last home of the day, even though employees regularly worked outside of that time frame. Plaintiffs and similarly situated putative class members did not record all of their working time. Apex management was aware of the underrecording of hours and provided incentives for Field Technicians to underrecord their work hours.

16.     The typical workday for Field Technicians, according to Apex, began the night before when they receive a fax from Apex outlining their route and assigned tasks for the following day. Each morning, Field Technicians load their cars with necessary products, equipment, and tools for the day and arrive at their first location at approximately 8:00 a.m. Field Technicians are not compensated for any of their work prior to arriving at their first jobsite of the day.

17.     Virtually every day, multiple Field Technicians were required to go to Apex's office to get their route for the day because Apex failed to fax it to them the previous evening. The Field Technicians were not compensated for their time spent waiting at the office to get their route, nor were they compensated for their travel time from Apex's office to their first customer's home.

18.     Once per week, every single Field Technician was required to attend a "team meeting" at Apex's office, typically at 7:00 a.m., before going to their first

customer's house. Apex took attendance at those meetings, but did not compensate Field Technicians for attending the meetings, which lasted up to two hours, and did not compensate them for the time it took them to travel from this business meeting to their first customer's home.

19.     At least once per week, Field Technicians were required, before beginning their workday, to go to Apex's office to pick up necessary supplies to perform their jobs.

20.     Field Technicians were not compensated thereafter for the time spent at the office loading equipment, nor were they compensated thereafter for time spent traveling from Apex's office to their first customer's home of the day.

21.     Four times per year, Field Technicians were required to arrive at Defendant Apex's place of business at 5:45 a.m., where they were required to wait until Apex completed a maintenance check of their vehicles and completed an inventory of Plaintiffs' equipment.  On those occasions, Field Technicians were required to wait at Apex's office for up to five hours.  Apex did not compensate Field Technicians for any of the waiting or inspection time, nor did Apex compensate Plaintiffs for the time it took to travel thereafter from Apex's office to the first customer's house of the day.

22.     Plaintiffs and other Field Technicians were required, en route to each customer's home, to call the customer to confirm the appointment.  If the customer did not answer the phone, Field Technicians were nevertheless required to go to that customer's home and ring the doorbell.  If the customer did not answer, Field

6

Technicians were required to leave a note hanging on the door informing the customer that a representative of Apex was there at the stated date and time, and that the customer missed the appointment.

23. After leaving the note, Plaintiffs and other Field Technicians were required to call Apex and await further instructions.

24. Plaintiffs and other Field Technicians were not paid for any of the time they spent traveling to and from these homes or for their other activities including leaving the notes and contacting Apex's offices. Nevertheless, the "no show" customers were required to pay Apex for missing the appointment.

25. Apex has never paid Plaintiffs or other Field Technicians for any of the time devoted to customers who did not show up for their appointments no matter how much time it took.

26. Plaintiffs and other Field Technicians were not paid for all of their productive time performing installations and service calls at customer homes.

27. Field Technicians were paid per each assignment they were given for which a customer was present. They were paid different rates per job depending on the complexity of the job and the expected number of hours each job should take.

28. Field Technicians regularly worked more than forty hours per week.

29. Apex claimed that Field Technicians would be paid an overtime rate determined as follows: The regular hourly rate was the total amount earned by an employee at the various regular piece rates in a given day divided by the number of

7

hours Apex recognized that the employee worked. The overtime rate was one and a half times that regular rate.

30.     Apex regularly failed to pay overtime as promised to its Field Technicians.     Apex frequently omitted full days of work from the overtime calculations of the Field Technicians as reflected in the Employee Reports of Wages Earned attached to the Complaint as Group Exhibit A.

31.     On the sheets outlining the next day's route that Apex either sent to Field Technicians each night or that they received at the Apex office in the morning, there were more jobs listed than could possibly be completed in an eight-hour workday. As recently as December 13, 2005, the assignment sheets included an estimate of the number of hours Apex estimated the Field Technicians would need to complete the jobs, a number that routinely exceeded 8 hours and sometimes was even higher than 24 hours. Furthermore, customers were told that Field Technicians would arrive at their house as early as 8:00 a.m. and as late as 8:00 p.m.

32.     Field Technicians filled out their time sheets with the actual hours they worked, but were simply not paid overtime for some of the overtime hours they worked.

33.     Many Field Technicians including Plaintiff Nery were effectively required to use company-owned vehicles which they were forbidden from using for personal use.

8

34.     Nevertheless, the Field Technicians were required to pay for all gasoline for the company-owned vehicles they were effectively required to use and were limited to using vehicles for work purposes only.

35.     At the same time Nery and other Field Technicians were required to use the company-owned vehicles, they were forced to accept a significant decrease in their pay rate.

## COUNT I
## VIOLATION OF ILLINOIS MINIMUM WAGE LAW

36.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 34 as paragraph 36 of this Count I.

37.     Plaintiff Radinski was an employee of Apex who was not paid full compensation for all work performed, in violation of the minimum wage provisions of the IMWL, 820 Ill. Comp. Stat. 105/1 et seq.

38.     Plaintiff Nery was an employee of Apex who was not paid full compensation for all work performed, in violation of the minimum wage provisions of the IMWL, 820 Ill. Comp. Stat. 105/1 et seq.

39.     At all relevant times herein, Defendants have been "employers" as defined in the IMWL, 820 Ill. Comp. Stat. 105/3(c) and Plaintiffs Radinski and Nery, and the class they represent, were "employees" within the meaning of the IMWL.

40.     Pursuant to the IMWL, Plaintiffs and other Field Technicians were entitled to be compensated for all work performed for the benefit of Defendants.

41.     It was the practice and policy of Defendants to not compensate Plaintiffs Radinski and Nery, and the class they represent, for any work performed before

arriving at the first home on their route and after leaving the last home on their route in instances where Plaintiffs began their workday by performing required tasks and/or attend meetings before and after work.

42. It was the practice and policy of Defendants to not compensate Plaintiffs Radinski and Nery, and the class they represent, at one and a half times their regular rate for hours worked in excess of forty (40) hours per week, in violation of the maximum hours provisions of the IMWL, 820 Ill. Comp. Stat. 105/1 et seq.

43. Class members including Plaintiff Nery are entitled to reimbursement for all monies they spent on gasoline used in Apex's vehicles.

44. The Court should certify this suit as a class action and determine the rights and remedies of the individual Plaintiffs and the class for back pay and damages pursuant to 820 Ill. Comp. Stat. 105/12 and prejudgment interest pursuant to 815 Ill. Comp. Stat. 205/2. The Court should further direct Defendants to account for all of said back wages and prejudgment interest thereon due Plaintiffs and the class they represent. The Court should further order Defendants to comply with the Illinois Minimum Wage Law in the future.

45. This suit is brought pursuant to 735 Ill. Comp. Stat. 5/2-801 as a class action because the class of Plaintiffs is so numerous that joinder of all members is impracticable. It is further impracticable, at this time, to discover the numerous members of the class similarly situated to Plaintiffs, or to join said members as parties to this suit; however, Plaintiffs believe that the number of similarly situated employees is over one hundred (100).

46.     Plaintiffs Radinski and Nery, therefore, bring this action on their own behalf as aggrieved former employees, and in their representative capacity on behalf of the class of aggrieved employees, against Defendants. The class representatives and the class Plaintiffs were affected in an identical fashion by the overtime pay violations of Defendants and their failure to pay overtime wages, and the relief sought is for the benefit of the individual Plaintiffs and the class they represent, and against Defendants.

47.     The issues involved in this cause present common questions of law and fact, and these common questions of law or fact predominate over any variations that may exist between members of the class.

48.     The individual Plaintiffs and the class Plaintiffs have commonality of interest in the subject matter and remedy sought, to wit, back pay plus penalties, interest, attorney fees and the costs of the lawsuit.

49.     The individual Plaintiffs believe and assert that they are able to represent the class fairly and adequately and they are able to protect the interests of the class. If each member of the putative class is required to bring an individual action, it would necessarily result in a multiplicity of lawsuits, creating a hardship to the individual Plaintiffs and to the Court, as well as to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this controversy and distribution of the money to which the class is entitled.

50.     The books and records of Apex are material to the case as they disclose the hours worked by Plaintiffs and the class members and what they were paid for

11

that work, as well as Apex's policies regarding which hours the company deemed to be compensable.

51. All Field Technicians were injured by Defendants' failure to comply with the IMWL and will continue to be in the future until Defendants are required to comply with the law now and into the future.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs Radinski and Nery, and the class they represent, complaining of Defendants, ask the Court to enter judgment in their favor, and against Defendants, both jointly and severally, for the following relief:

A. Ordering Defendants to make an accounting of all the hours worked and wages paid to the Plaintiffs and to each and every class member they represent for the period from December 28, 2003 to the present;

B. Entering a monetary judgment for all back wages due, as provided by the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 et seq.;

C. Entering a monetary judgment for additional damages in the amount of 2% of the amount of any such back wages for each month following the date of payment during which such back wages remain unpaid, as provided by the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/12(a) (2006);

D. Certifying a class of Field Technicians who worked for Defendants from December 28, 2003 through the present;

E. Ordering Defendants to comply with the Minimum Wage Law in the future;

F.     Ordering Defendants to reimburse Plaintiff Nery, and other class members for all monies they spent on gasoline used in the Apex's vehicles;

G.     Entering a monetary judgment for reasonable attorney fees and costs of this action as provided by the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/12;

H.     Determining an appropriate award for the class representatives;

I.     Entering an award for prejudgment interest as provided by 815 Ill. Comp. Stat. 205/2; and

J.     Such other and further relief as the Court may deem just and equitable.

### COUNT II – ILLINOIS WAGE PAYMENT AND COLLECTION ACT

52.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 50 as paragraph 52 of this Count II.

53.     Plaintiffs Radinski and Nery, and the class they represent, were "employees" of Defendants within the meaning of the IWPCA.

54.     Apex refused to pay Plaintiffs and the class they represent for certain hours worked as required under the IWPCA from December 28, 2003 to the present date.

55.     Defendants promised to pay Plaintiffs and the class they represent for said labor at hourly rates that varied during the relevant time period, and pursuant to the Illinois Wage Payment Collection Act, 820 Ill. Comp. Stat. 115/1, et seq., Plaintiffs and the class are entitled to be paid for their wages.

13

56.     Defendants Apex, Dycom, Dycom Investments, Chastain and West are or were employers of Plaintiffs and the class they represent within the meaning of the IWPCA in that, among many other things, they had the power to control how many hours Plaintiffs and the class members worked, whether they were paid for all hours worked, and whether they were paid one and one-half times their regular rate of pay for hours worked in excess of forty (40) in a week.

57.     Plaintiffs and the class they represent were not paid for all hours worked. Thus, Defendants Apex, Dycom, Dycom Investments, Chastain and West have wrongfully converted employees' wages for their own use.

58.     Defendants Apex, Dycom, Dycom Investments, Chastain and West failed, neglected or refused to pay Plaintiffs and the class they represent during the period from December 28, 2003 to the present pursuant to 820 Ill. Comp. Stat. 115/4; and, as a direct and proximate result thereof, Plaintiffs and the class they represent have been damaged in a currently unknown amount.

59.     As of the present day, Defendants Apex, Dycom, Dycom Investments, Chastain and West have failed to pay such unpaid wages.

60.     All plaintiffs have been injured by Defendants' failure to comply with the IWPCA and will continue to be in the future until Defendants are required to comply with the law now and into the future.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs Radinski and Nery, and the class they represent, complaining of Defendants, respectfully request that this Court enter judgment in their favor, and against Defendants, both jointly and severally, for the following relief:

A.      Ordering Defendants to make an accounting of all the hours worked and wages paid to Plaintiff and to each and every class member they represent for the period from December 28, 2003 to the present;

B.      Ordering Defendants to comply with the Illinois Wage Payment and Collection Act in the future;

C.      Entering a monetary judgment in favor of Plaintiffs and the class they represent, and against each Defendant both jointly and severally, for the back wages due under the Wage Payment and Collection Act, plus prejudgment interest at the statutory rate pursuant to 815 Ill. Comp. Stat. 205/2;

D.      Certifying a class of Field Technicians who worked for Defendants from December 28, 2003 through the present;

E.      Awarding an appropriate award for the class representatives and attorneys' fees and costs; and

F.      Such other and further relief as may be just in law and in equity.

## COUNT III – FEDERAL FAIR LABOR STANDARDS ACT

61.     Plaintiffs Radinski and Nery incorporate and re-allege each and every allegation of Count I and Count II as though fully set forth herein.

62. At any and all times relevant hereto, Defendants Apex, Dycom, Dycom Investments, Chastain and West were, and still are, an "enterprise" and an "enterprise engaged in commerce" as defined by Sections 3(r) and (s) of the Fair Labor Standards Act, 29 U.S.C. § 203 (r) and (s).

63. Defendants Apex, Dycom, Dycom Investments, Chastain and West are and at all relevant times herein were "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

64. At any and all times relevant hereto, Plaintiffs and other Field Technicians were "employees" as defined by Sec. 3(e) of the FLSA, 29 U.S.C. § 203(e).

65. Plaintiffs Radinski and Nery are entitled to compensation at a rate not less than one and one-half times their regular rate of pay for all time worked in excess of forty (40) hours in any week during the three (3) years preceding the filing of this action, including but not limited to all uncompensated time spent engaged in pre and post shift activities such as loading and unloading vehicles, reviewing and prioritizing work assignments, assembling satellite dishes, attending meetings, picking up equipment, waiting for customers, performing installations and service calls, servicing or cleaning their vehicles, driving to customers' homes from their house or the office, driving between customer homes, and driving home from the last customer site.

66. Other employees similarly situated to Plaintiffs Radinski and Nery are likewise entitled to compensation at a rate not less than one and one-half times their regular rate of pay for all time worked in excess of forty (40) hours in any week during the three (3) years preceding the filing of this action, including but not limited to all

16

uncompensated time spent engaged in pre and post shift activities such as loading and unloading vehicles, reviewing and prioritizing work assignments, assembling satellite dishes, attending meetings, picking up equipment, waiting for customers, performing installations and service calls, servicing or cleaning their vehicles, driving to customers' homes from their house or the office, driving between customer homes, and driving home from the last customer site.

67.     Plaintiffs and all other employees similarly situated are entitled to reimbursement for gasoline used in Defendants' vehicles and any other cost incurred in connection with their employment.

68.     Defendants knew their obligations under the FLSA, but deliberately chose not to heed them. Thus, Defendants' failure to pay compensation at the rate of one and one-half times the regular rate for all hours worked over forty (40) in a workweek, their failure to compensate employees for all time spent working are all intentional violations of the FLSA.

69.     In denying Plaintiffs and other similarly situated persons compensation at a rate of one and one-half times their regular rate of pay for time worked over forty (40) in a workweek, Defendants' acts were not based upon good faith or reasonable grounds.

70.     As a direct and proximate result thereof, there is due to Plaintiffs and other similarly situated persons back wages and liquidated damages pursuant to 29 U.S.C. § 216.

71.     Plaintiffs have attached their Notices of Consent to Become a Party Plaintiff as Exhibit B hereto.

## PRAYER FOR RELIEF

WHEREFORE Radinski and Nery, complaining of Defendants, ask the Court to enter judgment in their favor, and against Defendants, both jointly and severally, for the following relief:

A.     For a judgment for all back wages due from December 14, 2003 to the present in accordance with 29 U.S.C. §§ 206 and 207 and an additional, equal amount in liquidated damages, as provided by 29 U.S.C. § 216;

B.     For reasonable attorneys' fees and costs of this action as provided by 29 U.S.C. § 216; and

C.     Such other and further relief that this Court deems just under the circumstances.

## COUNT IV – WILLFULL VIOLATION OF FLSA

72.     Plaintiffs Radinski and Nery, on their own behalf and on behalf of other similarly situated persons, repeat and re-allege each and every allegation of Counts I, II and III as though fully set forth herein.

73.     At all times relevant hereto the action of Defendants to not pay for all hours worked was willful in that Defendants knew that the FLSA requires every employer to pay employees for all hours worked.

74.     At all times relevant hereto the action of Defendants to not pay time and one-half for all hours worked over forty (40) in a week was willful in that among other

18

things, Defendants knew that the FLSA required every employer to pay time and one-half for all hours worked over 40 in a week.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Radinski and Nery, complaining of Defendants, ask the Court to enter judgment in their favor, and against Defendants, both jointly and severally, for the following relief.

A.    For a judgment for all back wages due, prejudgment interest in accordance with established federal case law and 815 Ill. Comp. Stat. 205/2 and liquidated damages, as provided by 29 U.S.C. § 216 on behalf of themselves and all others similarly situated;

B.    For reasonable attorneys' fees and costs of this action as provided by 29 U.S.C. § 216; and

C. Such other relief as the Court deems just under the circumstances.

Dated:  July 30, 2008                Respectfully Submitted,

DANIEL RADISNKI and VICTOR NERY,
individually and on behalf of a class of
Employees similarly situation,

By: _____
                Attorney for Plaintiffs

Penny Nathan Kahan
Ruth I. Major

Firm No: 42634
Penny Nathan Kahan & Associates, Ltd.
208 South LaSalle Street, Suite 1660
Chicago, Illinois 60604
(312) 855-1660

Jac A. Cotiguala
Jac A. Cotiguala & Associates
431 S. Dearborn Street, Suite 606
Chicago, Illinois 60605
(312) 939-2100
Attorney No. 18353

Douglas M. Werman
The Werman Law Office
77 West Washington Street, Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008
Fax: (312) 419-1025
Attorney Code No.: 6204740

## CERTIFICATE OF SERVICE

The undersigned attorney for Plaintiffs certifies that she caused a copy of **Plaintiffs' Third Amended Complaint** and **Notice of Filing** to be served upon Defendants' counsel of record at the addresses listed below via electronic mail and regular mail this 30th day of July 2008:

James Oh
Garrison Phillips
Littler Mendelson
200 North LaSalle Street
Suite 2900
Chicago, IL 60601

Gerald L. Maatman, Jr.
Brenda H. Feis
Rebecca P. Bromet
Scott M. Paler
Seyfarth Shaw LLP
131 S. Dearborn Street
Suite 2400
Chicago, IL 60603

Antonio D. Robinson
Lisa Schreter
Angelo Spinola
Anne Mellen
Littler Mendelson
3348 Peachtree Road, N.E.
Suite 1100
Atlanta, GA 30326

_Ruth I. Major_
Ruth I. Major